73 F.3d 369
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNITED CHARTER SERVICE, Respondent.
 No. 95-70379.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 4, 1995.
Decided Dec. 21, 1995.
 
 Before: BROWNING, CANBY, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board applies for enforcement of an Order issued against United Charter based on a finding that United Charter violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. 158(a)(1) and (5). We enforce the Board's Order.
 
 I.
 
 3
 The Board's finding that Gary Lipsie was not a supervisor is supported by substantial evidence. Lipsie did not hire, transfer, suspend, layoff, fire, or discipline other employees. See 29 U.S.C. 152(11) (defining supervisor). Lipsie spent the vast majority of his time doing mechanical work. He divided and prioritized work to be done, but the process was routine--the work was prioritized and assigned according to its impact on bus safety. As in George C. Foss Co. v. N.L.R.B., 752 F.2d 1407, 1411 (9th Cir.1985), Lipsie's direction of other mechanics was "consistent with a foreman's routine 'supervisory' duties ...". United Charter's president admitted that Lipsie's record keeping functions were basically "clerical" and "routine." See N.L.R.B. v. S.R.D.C., Inc., 45 F.3d 328, 332 (9th Cir.1995) (exercise of allegedly supervisory powers must be more than routine or clerical).
 
 
 4
 Any changes in Lipsie's activities between the representation hearing and the election were insufficient to constitute evidence of changed circumstances. The fact that he was scheduled to act as the company's liaison during the March California Highway Patrol inspection was considered at the representation hearing; his actual participation at the inspection did not change his status. Although he attended several management meetings, he did so in the capacity of "temporary" supervisor; the company president's use of that term indicates that Lipsie's attendance at those meetings did not reflect any significant change in his status. Like the management meetings in Auto West Toyota v. N.L.R.B., 284 N.L.R.B. 659, 661 (1987), the meetings Lipsie attended were held to enable various departments to "exchange ideas and coordinate their functions," ER 250; there was no evidence that Lipsie contributed anything or exerted any influence at the meetings. The fact that the company president requested and followed Lipsie's recommendation to increase a mechanic's pay was no more than "the practice of a prudent employer to seek the advice of his foreman in evaluating employees." Foss, 752 F.2d at 1411.
 
 
 5
 We affirm the Board's finding that Lipsie was not a supervisor within the meaning of Section 2(11) of the Act.
 
 II.
 
 6
 The Board correctly found that Alvin Pietzsch shared a sufficient community of interest with the mechanics for him to be included in the bargaining unit. Pietzsch's wages and hours were similar to those of some mechanics. He worked side by side with them and participated in the kind of frequent interchange with them that "has been regarded as a critical factor in ascertaining a community of interest among employees." N.L.R.B. v. Carson Cable TV, 795 F.2d 879, 885 (9th Cir.1986) (internal quotation omitted); cf. Dodge City of Wauwatosa, Inc. v. N.L.R.B., 289 N.L.R.B. 459, 459-60 (1986) (no community of interest where mechanics had only "limited and casual" contact with other employees, inter alia ). Pietzsch's work as a mechanic's helper complemented that of the mechanics, and he did similar, albeit less complicated, work. As the Board found in a similar case, where "all employees in the service department possessed and exercised the skills of automobile mechanics, and the functions they performed were related to auto repair," they should all be included in the same bargaining unit. Austin Ford v. N.L.R.B., 136 N.L.R.B. 1398, 1400 (1962), quoted in Dodge City, 289 N.L.R.B. at 460 n. 5.
 
 
 7
 United Charter did not meet its burden of showing that the Board abused its discretion in finding Pietzsch and the mechanics share a community of interest.
 
 III.
 
 8
 United Charter failed to present evidence which, together with fair inferences from that evidence, would be sufficient to invalidate the election on the ground that Chris Rardin received improper inducement from the Union in exchange for his election support; accordingly, the company is not entitled to an evidentiary hearing on that issue. See Scintilla Power Corp. v. N.L.R.B., 707 F.2d 419, 421 (9th Cir.1983); 29 C.F.R. Sec. 102.69(d). The only facts presented by the company were that Rardin applied for a job with a company where mechanics are represented by the same Union, and that he got the job. Any inference that the Union promised Rardin the job or helped him get it is pure speculation. cf. N.L.R.B. v. Nixon Gear, Inc., 649 F.2d 906, 912-13 (2d Cir.1981) (witnesses testify that employee said the Union promised him a job in exchange for his support).
 
 
 9
 Rardin was employed by United Charter and had not yet been hired by Golden Gate Transit on the date of the election. Even if he intended to leave United Charter at the time of the election, he still shared a community of interest with the other mechanics and was eligible to vote. As this Court held in St. Elizabeth Community Hospital v. N.L.R.B., 708 F.2d 1436, 1444 (9th Cir.1983), "[e]ligibility to vote in a representation election is dependent upon employment in the bargaining unit during the eligibility period and on the date of the election."
 
 IV.
 
 10
 The Board's decision is affirmed and its order ENFORCED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3